**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAMYON PEACE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE STEELSTONE GROUP LLC d/b/a GOURMIA,<br><br>Defendant. | Case No. 1:26-cv-7517<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DAMYON PEACE ("Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of The Steelstone Group LLC d/b/a Gourmia (hereinafter "Gourmia" or "Defendant") with respect to the designing, importing, manufacturing, warranting, marketing, labeling, distributing, and sale of Defendant's Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Ovens, bearing Model No. GTF7530, UPC Code 810002862779, and rear-label Date Codes 3021 through 0126, throughout the United States (hereinafter the "Products" or "Product").

2. Defendant has improperly, deceptively, and misleadingly labeled, advertised, and marketed its Products to reasonable consumers, like Plaintiff, by promoting the Products on packaging and Target retail listings as a safe, convenient "Gourmia 9-Slice Digital Air Fryer Oven with 14 One-Touch Cooking Functions and Auto French Doors" whose "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven," while omitting

and failing to disclose that the Products contain a uniform, serious safety defect wherein the two spring-loaded glass front French doors can unexpectedly snap or swing closed when bumped, posing an acute burn hazard to consumers retrieving hot food (the "Defect").

3. Countertop air fryer and convection toaster ovens are high-wattage thermal appliances (operating at 1,700 watts and cooking temperatures reaching 400°F and higher) that require users to open the front French doors and reach their hands and wrists directly between the open glass doors into a superheated metal cooking cavity to insert, turn, or retrieve hot food, baking pans, oven racks, and air-fry baskets. When the spring-loaded French doors unexpectedly close upon contact or bumping during food retrieval, they strike or trap the user's hands or wrists against scalding glass, metal racks, cookware, and heated surfaces.

4. The uniform Defect in the Products has already caused dozens of documented burn injuries: prior to recalling the Products, Defendant had received at least 57 reports of the oven doors closing unexpectedly when retrieving food, resulting in at least 40 incidents of burn injuries to consumers' hands or wrists.

5. Plaintiff and those similarly situated (hereinafter "Class Members") reasonably expect that a countertop air fryer oven specifically marketed for its convenient "Auto French Doors" will hold its doors safely open while hot food is being removed and will not contain a uniform mechanical defect that causes its spring-loaded glass doors to slam shut onto users' hands and wrists.

6. Consumers trust appliance importers, warrantors, and distributors like Defendant to sell high-temperature kitchen appliances that are safely engineered, equipped with adequate door-retention and doorstop mechanisms, and thoroughly tested for foreseeable household cooking operations before being placed into the stream of commerce.

7. Unfortunately for consumers, including Plaintiff, every recalled unit of the Products they purchased contained this uniform, dangerous Defect at the point of sale.

8. Defendant utilized a uniform marketing, labeling, packaging, and e-commerce product-listing campaign across Target stores and Target.com that affirmatively touted the convenience of the Products' French doors while omitting any warning that those spring-loaded doors lacked an adequate doorstop and could unexpectedly close and burn users retrieving hot food.

9. Knowing that a 1,700-watt oven's spring-loaded glass doors can unexpectedly close on a user's hands and wrists during hot-food retrieval is highly material to reasonable consumers. The existence of this Defect was a material fact within the exclusive and superior possession of Defendant, and ordinary retail shoppers—particularly online purchasers—could not reasonably discover this mechanical Defect prior to purchasing the Products.

10. Defendant's affirmative representations, partial disclosures, and material omissions mislead reasonable consumers into believing they are purchasing a safe, properly engineered French-door air fryer oven ready for daily kitchen use when, in reality, they are purchasing a uniformly defective appliance fraught with burn hazards.

11. While Defendant, in conjunction with the United States Consumer Product Safety Commission ("CPSC"), finally announced a voluntary recall of approximately 175,951 units of the Products on November 5, 2026 (CPSC Recall No. 27-069) (the "Recall"), the Recall is structurally inadequate, one-sided, and insufficient to make consumers whole.

12. The Recall instructs all consumers who purchased the Products that they "should stop using the recalled Ovens immediately" and directs them to contact Defendant solely to request

a mail-order repair kit consisting of "an added doorstop and instructions on how to install," which takes weeks to arrive after a claim is submitted.

13. Rather than offering a refund, store credit, or a factory-engineered replacement oven, Defendant's Recall is designed to minimize Defendant's financial exposure at consumers' expense: it provides zero monetary relief or price-premium restitution; deprives purchasers of the use of a primary countertop cooking appliance; shifts the burden and risk of mechanical remediation onto ordinary consumers by expecting them to self-install an aftermarket doorstop onto the spring-loaded glass doors of a 1,700-watt high-heat appliance; and leaves consumers with a recalled, consumer-patched unit worth materially less than the defect-free appliance they bargained and paid for. Because Defendant has failed to adequately compensate Plaintiff and Class Members, this class action is superior to Defendant's inadequate Recall in every respect.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because this is a proposed nationwide class action in which numerous members of the proposed Nationwide Class—who purchased the recalled Products at Target retail stores and on Target.com across all fifty states—are citizens of states different from Defendant, a citizen of the State of New York.

15. Further, the proposed Nationwide Class consists of well over 100 Class Members (approximately 175,951 recalled units were sold nationwide), and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, given nationwide retail sales of approximately 175,951 units priced up to $150 per unit, in addition to applicable statutory damages and attorneys' fees.

16. Neither the mandatory nor discretionary exceptions to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3) or (d)(4) apply because the recalled Products were marketed and sold nationwide through Target brick-and-mortar stores and Target.com for nearly five years, and well over two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of states other than New York.

17. This Court has general and specific personal jurisdiction over Defendant because Defendant is a New York domestic limited liability company that maintains its corporate headquarters and principal place of business in Kings County within this District at 3611 14th Avenue, Suite 540, Brooklyn, New York 11218, regularly conducts systematic and continuous business in New York, and directed the nationwide importation, product design, marketing, warranty administration, distribution, sale, and November 5, 2026 Recall of the Products from its Brooklyn headquarters.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides and maintains its principal place of business in Kings County within this District, Plaintiff resides in Kings County within this District and purchased and received his recalled Product in this District, and a substantial part of the events and omissions giving rise to Plaintiff's and the Classes' claims—including Defendant's executive decisions concerning product specifications, packaging and listing representations, concealment of the Defect, and administration of Recall No. 27-069—occurred in this District.

## **PARTIES**

*Plaintiff*

19. Plaintiff Damyon Peace is, and at all times relevant to this action was, a citizen and resident of Brooklyn, New York, which is located in Kings County.

20. On March 7, 2026, Plaintiff Peace purchased Defendant's Product—specifically, a new Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Oven (Model No. GTF7530, UPC Code 810002862779)—online through Target.com (Target Order No. 902003318426685) for a unit price of $109.99, plus applicable tax, for personal and household use.

21. On March 9, 2026, Target delivered the Product in its manufacturer's packaging directly to Plaintiff Peace's residence in Brooklyn, New York.

22. The rear rating label affixed to Plaintiff Peace's Product identifies it as a Gourmia "DIGITAL AIR FRYER OVEN," "MODEL NO.: GTF7530," "AC 120V 60Hz 1700W," bearing "DATE CODE: 0126(13)," which falls squarely within the recalled Date Codes 3021 through 0126 covered by CPSC Recall No. 27-069.

23. Prior to purchasing the Product on Target.com, Plaintiff Peace viewed and relied upon the Target.com product listing—including the Product's title, photographs showing the stainless-steel unit with dual glass French doors, and uniform manufacturer product descriptions promoting the Gourmia "9-Slice Digital Air Fryer Oven" with "Auto French Doors" as a safe, convenient, and reliable household cooking appliance.

24. Nowhere on the Target.com product listing or on the manufacturer's packaging delivered to Plaintiff Peace did Defendant disclose that the Product's spring-loaded glass front French doors lacked an adequate doorstop and could unexpectedly close when bumped, posing a serious burn hazard while retrieving hot food.

25. Following the announcement of CPSC Recall No. 27-069, on or about November 7, 2026, Plaintiff Peace received an official safety recall alert email from Target specifically referencing his Target.com Order No. 902003318426685, notifying him that his "Gourmia Stainless Steel Digital 9 Slice Digital Air Fryer Oven[]" had been recalled due to a burn hazard

and instructing that "[c]onsumers should stop using the recalled Ovens immediately." Plaintiff Peace still possesses his recalled Product.

26. Had Defendant disclosed the existence of this material safety Defect prior to purchase, Plaintiff Peace would not have purchased the Product, or would only have been willing to pay substantially less for it. Plaintiff Peace paid a price premium based on Defendant's false, misleading, and deceptive representations and omissions regarding the safety and functionality of the Product's French doors. Because Plaintiff Peace's unit was delivered with the uniform Defect at the time of sale and Defendant's Recall offers neither a refund nor a factory-safe replacement unit, Plaintiff Peace overpaid for a defective appliance, was deprived of the benefit of his bargain and safe use of his Product, and suffered concrete economic injury as a direct and proximate result of Defendant's unlawful conduct.

*Defendant*

27. Defendant The Steelstone Group LLC d/b/a Gourmia is a domestic for-profit limited liability company organized and existing under the laws of the State of New York, with its corporate headquarters and principal place of business located at 3611 14th Avenue, Suite 540, Brooklyn, New York 11218.

28. Pursuant to 28 U.S.C. § 1332(d)(10), as a limited liability company organized under New York law with its principal place of business in Brooklyn, New York—and whose constituent members are likewise citizens and residents of the State of New York—Defendant is a citizen of the State of New York for purposes of CAFA jurisdiction.

29. Defendant is the United States designer, importer, warrantor, marketer, distributor, and seller of Gourmia-branded countertop kitchen appliances, including the recalled Gourmia

Stainless Steel Digital 9-Slice Digital Air Fryer Ovens (Model No. GTF7530, UPC Code 810002862779, Date Codes 3021 through 0126) manufactured in China.

30. From its headquarters in Brooklyn, New York, Defendant authored, approved, controlled, and disseminated the uniform false, misleading, and deceptive packaging, retail product-listing descriptions, user manuals, express warranties, marketing materials, and November 5, 2026 Recall remedy for the Products throughout New York and the United States.

## FACTUAL BACKGROUND

31. The countertop air fryer and convection toaster oven market is fiercely competitive, and mechanical safety, thermal protection, and ease of door operation are central to consumer purchasing decisions—especially for premium French-door countertop ovens priced above standard drop-down-door toaster ovens.

32. From October 2021 through June 2026, Defendant imported, warranted, marketed, distributed, and sold approximately 175,951 units of the Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Oven (Model No. GTF7530, UPC Code 810002862779, Date Codes 3021 through 0126) exclusively or primarily at Target retail stores nationwide and online at Target.com for retail prices up to approximately $150 (including promotional pricing around $109.99).

33. Each Product is a large-capacity (37-quart), 1,700-watt brushed stainless-steel countertop convection and air fryer oven equipped with two spring-loaded glass front French doors with vertical metal handles, a digital control panel on the right side, and removable metal accessories including an air-fry basket, oven rack, baking pan, and crumb tray.

34. At all relevant times, Defendant marketed, advertised, and labeled the Products in a uniform and consistent manner on outer retail boxes and on Target.com. Specifically, Defendant titled and promoted the Product as the "Gourmia 9-Slice Digital Air Fryer Oven with 14 One-

Touch Cooking Functions and Auto French Doors" and expressly represented in its uniform product highlights that "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven."

35. Defendant further promoted the Products as versatile, everyday family cooking appliances featuring "Fry Force 360° Technology," "14 One-Touch Cooking Functions" (including air fry, toast, bake, broil, roast, pizza, reheat, and dehydrate at high heat), an "[e]xtra-large capacity [that] fits a 13" pizza, 9 slices of bread, or a whole chicken," and backed each unit with a "1 Year Limited Warranty."

36. Thus, the marquee design feature Defendant used to differentiate Model GTF7530 and command a premium retail price—the synchronized, spring-loaded French door assembly—was expressly marketed as making hot-food handling safer, easier, and more convenient for the operator.

37. In ordinary, intended household use, operating the Product requires the user to pull open the French doors after a high-heat cooking cycle and extend one or both hands and wrists directly between the two open glass doors into a narrow, 1,700-watt heated interior to slide out hot wire racks, air-fry baskets, or baking pans. For such an appliance to be safe and fit for ordinary cooking, its doors must reliably remain fully open and stationary during food retrieval, even when inadvertently brushed or bumped by a user's arm, oven mitt, or pan.

38. Consumers shopping in a Target aisle or viewing photographs and bullet points on Target.com have no ability prior to purchase to inspect internal hinge tension, spring-return force, or doorstop geometry, or to test whether the French doors will snap shut during high-heat food retrieval. Consumers must and reasonably do rely on Defendant's uniform product descriptions and omissions of safety hazards.

39. Contrary to Defendant's uniform marketing and warranty representations, all recalled units of Model GTF7530 (Date Codes 3021 through 0126) suffer from a uniform design and safety Defect: the two spring-loaded glass front French doors lack an adequate factory doorstop or retention mechanism and can unexpectedly snap or swing closed when bumped while a consumer is reaching inside to retrieve hot food, driving the hot interior glass and metal door edges into—or pinning—the user's hands and wrists against scalding racks, pans, and heating surfaces.

40. Defendant is an experienced appliance designer, patent holder, importer, and distributor with exclusive and superior access to engineering drawings, factory quality-control testing in China, UL 1026 compliance files, Target customer return and complaint logs, direct warranty claims, and CPSC incident reports concerning Model GTF7530.

41. Prior to Plaintiff's March 7, 2026 purchase—near the very end of the Product's nearly five-year retail run spanning October 2021 through June 2026—Defendant knew, or at a minimum should have known, of the Defect through pre-production and post-market testing, customer complaints, Target return data, and scores of direct incident and injury reports. Indeed, in connection with the November 5, 2026 Recall, Defendant acknowledged that it had received 57 reports of the oven doors closing unexpectedly when retrieving food, including 40 incidents of burn injuries to consumers' hands or wrists.

42. Despite accumulating dozens of reports of unexpected door closures and hand and wrist burns over nearly five years of sales, Defendant continued importing, distributing, and selling the defective Products through June 2026—including Plaintiff's March 2026 purchase—without installing an adequate factory doorstop, halting sales earlier, or disclosing the burn hazard on the Products' packaging or Target.com product page.

43. On November 5, 2026, Defendant, in conjunction with the CPSC, announced Recall No. 27-069 covering approximately 175,951 Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Ovens (Model No. GTF7530, UPC Code 810002862779, Date Codes 3021 to 0126). The Recall explicitly admits that "[t]he oven's doors can unexpectedly close when bumped, posing a burn hazard to consumers retrieving hot food," and warns that "[c]onsumers should stop using the recalled Ovens immediately."

44. Yet instead of offering purchasers a full refund, store credit, or a factory-safe replacement oven, Defendant's Recall restricts consumers solely to requesting "a free repair kit by mail" consisting of "an added doorstop and instructions on how to install," which Defendant's recall portal indicates takes two to four weeks to arrive after submitting a claim.

45. Defendant's mail-order do-it-yourself ("DIY") doorstop kit fails to cure Defendant's unlawful conduct or make Plaintiff and Class Members whole: (a) it offers zero monetary refund or restitution of the purchase price or price premium paid at the point of sale for an appliance marketed as having safe, ready-to-use "Auto French Doors"; (b) it forces consumers to immediately cease using a countertop oven they paid up to $150 to use; (c) it improperly offloads factory manufacturing remediation onto ordinary household consumers by expecting them to perform a mechanical retrofit on the spring-loaded glass doors of a 1,700-watt high-heat cooking appliance; and (d) even if retrofitted with an aftermarket add-on doorstop, a recalled, consumer-patched appliance suffers permanent diminution in value compared to a properly manufactured, defect-free oven.

46. At all relevant times, Defendant concealed the true nature and severity of the Defect from Plaintiff and Class Members. Because the mechanical insufficiency of the French-door retention system was latent at the point of sale, Plaintiff and Class Members could not reasonably

have discovered the Defect or their causes of action until the November 5, 2026 Recall. Accordingly, any applicable statutes of limitations for purchasers from October 2021 forward are tolled by the discovery rule and fraudulent concealment, and Defendant is equitably estopped from asserting any statute-of-limitations defense.

## CLASS ALLEGATIONS

47. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3). As detailed herein, Defendant engaged in uniform deceptive marketing, false advertising, express-warranty breaches, omissions of a uniform mechanical safety Defect, and an inadequate nationwide Recall that uniformly injured purchasers of Model GTF7530.

48. Plaintiff seeks to represent the following proposed Classes (collectively, the "Classes"):

49. Nationwide Class: All persons within the United States who purchased one or more of Defendant's recalled Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Ovens (Model No. GTF7530, UPC Code 810002862779, Date Codes 3021 through 0126) for personal or household use.

50. New York Subclass: All persons who purchased one or more of Defendant's recalled Gourmia Stainless Steel Digital 9-Slice Digital Air Fryer Ovens (Model No. GTF7530, UPC Code 810002862779, Date Codes 3021 through 0126) in the State of New York—including online purchases delivered to an address in the State of New York—for personal or household use.

51. Excluded from the Classes are all legal entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, members, legal representatives, successors, and assigns, any person asserting claims for personal physical injury

arising from the Defect (whose personal-injury claims are expressly preserved and excluded from this economic-loss class action), and any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

52. Plaintiff reserves the right to modify, narrow, or expand the definitions of the proposed Classes, including by adding additional state subclasses if warranted, based upon discovery and further investigation.

53. *Numerosity*: The proposed Nationwide Class and New York Subclass are each so numerous that joinder of all members is impracticable. Approximately 175,951 recalled units of Model GTF7530 were sold nationwide through Target stores and Target.com, including thousands of units sold and delivered in New York. Class Members are readily ascertainable and can be notified directly through Target's electronic purchase and recall-notice records (the same order database Target used to email recall alerts to purchasers such as Plaintiff), Defendant's warranty and recall-registration records, and targeted digital publication notice.

54. *Commonality*: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. Common legal and factual questions include, without limitation: (a) whether all recalled units of Model GTF7530 contain a uniform French-door Defect posing an unreasonable burn hazard; (b) whether Defendant knew or should have known of the Defect prior to selling the Products to Plaintiff and Class Members; (c) whether Defendant's packaging and Target.com representations and omissions were materially deceptive and misleading to a reasonable consumer under N.Y. Gen. Bus. Law §§ 349 and 350; (d) whether Defendant created and breached uniform express warranties under U.C.C. § 2-313; (e) whether Defendant had an affirmative duty to disclose the Defect and fraudulently concealed it at the point of sale; (f) whether Defendant was unjustly enriched at the expense of

Plaintiff and Class Members; (g) whether Defendant's mail-in DIY doorstop Recall is inadequate to remediate Class Members' economic injury; and (h) the proper measure of actual, price-premium, statutory, and punitive damages, restitution, and injunctive or declaratory relief.

55. *Typicality*: Plaintiff's claims are typical of the claims of the Nationwide Class and New York Subclass. Plaintiff and all Class Members purchased the exact same recalled model (Model No. GTF7530), were exposed to Defendant's uniform packaging and Target marketing representations and omissions, received Products afflicted with the same uniform French-door Defect and inadequate DIY Recall, suffered economic overpayment injury at the point of sale in substantially the same manner, and seek relief under the same legal theories.

56. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the proposed Classes and has no interests antagonistic to those of Class Members. Plaintiff has retained counsel experienced in prosecuting complex consumer protection, false advertising, and recalled-product class actions in federal courts throughout the Second Circuit and nationwide.

57. *Declaratory and Injunctive Relief (Rule 23(b)(2))*: Defendant has acted or refused to act on grounds that apply generally to the Classes by limiting Recall No. 27-069 exclusively to a mail-in aftermarket doorstop kit while refusing to offer refunds, store credits, or factory-safe replacement ovens, making final injunctive and declaratory relief appropriate respecting the Classes as a whole.

58. *Predominance*: Common questions of law and fact predominate over any questions affecting only individual Class Members because every recalled unit shares the identical Model No. GTF7530 French-door design, uniform Target retail channel and marketing representations, uniform point-of-sale safety omission, and uniform mail-in repair-kit Recall policy. Class-wide

overpayment, benefit-of-the-bargain, and statutory damages are readily calculable using common methodologies and Target retail pricing data.

59. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation by tens of thousands of purchasers over a countertop appliance retailing between roughly $110 and $150 is economically impracticable. Absent a class action, Defendant would retain millions of dollars in ill-gotten revenues while forcing consumers to accept an inadequate DIY repair kit or absorb the loss of their purchase price.

60. *Manageability*: Plaintiff is unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action, particularly given that all recalled units are a single model sold through Target stores and Target.com.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York General Business Law § 349 — Deceptive Acts and Practices**
**(On Behalf of Plaintiff and the New York Subclass)**

61. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the New York Subclass pursuant to New York General Business Law ("GBL") § 349.

63. GBL § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Neither individualized pre-suit notice nor contractual privity is required to state a claim under GBL § 349.

64. Defendant's marketing, labeling, distribution, and sale of the recalled Products at Target stores in New York and on Target.com for delivery to New York consumers—directed

from Defendant's headquarters in Brooklyn, New York—constituted consumer-oriented conduct directed at the general consuming public.

65. Defendant engaged in materially misleading and deceptive acts and omissions by promoting the Products as a safe, convenient "Gourmia 9-Slice Digital Air Fryer Oven with 14 One-Touch Cooking Functions and Auto French Doors" whose "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven," while omitting and concealing that the spring-loaded glass front French doors lacked an adequate doorstop and could unexpectedly snap or swing shut when bumped, posing a serious burn hazard when retrieving hot food.

66. Defendant's representations and omissions were likely to mislead—and did mislead—reasonable consumers acting reasonably under the circumstances, including Plaintiff when he purchased Model GTF7530 on Target.com for delivery to his Brooklyn, New York residence on March 7, 2026. Reasonable consumers would consider a latent door-closure burn hazard on a 1,700-watt countertop oven highly material to their purchasing decision.

67. Defendant acted willfully and knowingly within the meaning of GBL § 349(h) by continuing to market and sell the Products through June 2026 despite possessing exclusive knowledge of the Defect and accumulating dozens of consumer reports of unexpected door closures and hand and wrist burn injuries.

68. As a direct and proximate result of Defendant's violations of GBL § 349, Plaintiff and New York Subclass Members suffered actual injury in New York at the moment of purchase by paying a price premium for—or purchasing altogether—a uniformly defective and unsafe appliance worth materially less than represented, and Defendant's mail-in DIY doorstop Recall has not refunded or compensated those economic losses.

69. Pursuant to GBL § 349(h), Plaintiff and the New York Subclass seek injunctive relief, actual damages or statutory damages of $50 per violation (whichever is greater), discretionary treble damages up to $1,000 per willful or knowing violation, and mandatory reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of New York General Business Law § 350 — False Advertising**
**(On Behalf of Plaintiff and the New York Subclass)**

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the New York Subclass pursuant to New York General Business Law ("GBL") §§ 350 and 350-a.

72. GBL § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Under GBL § 350-a(1), "false advertising" encompasses advertising—including product labeling, outer packaging, and online retail product descriptions—that is misleading in a material respect, taking into account not only affirmative representations made by statement, word, or design, but also the extent to which the advertising fails to reveal material consequences and safety hazards resulting from ordinary use of the commodity.

73. Defendant disseminated uniform consumer-oriented advertising across New York on the Products' packaging and Target.com product pages touting the Products' "Auto French Doors" and representing that "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven," while failing to disclose the material fact that the spring-loaded French doors could unexpectedly close when bumped and burn users' hands and wrists while retrieving hot food.

74. Defendant's advertising was false and misleading in a material respect to reasonable consumers acting reasonably under the circumstances, and directly impacted consumers in New York, including Plaintiff when he reviewed the Target.com product page and purchased Model GTF7530 in Brooklyn, New York.

75. Defendant knew that its French-door advertising claims and safety omissions were false and misleading while dozens of unexpected door closures and burn injuries were being reported, rendering Defendant's violations willful and knowing under GBL § 350-e(3).

76. As a direct and proximate result of Defendant's violations of GBL § 350, Plaintiff and New York Subclass Members suffered actual monetary injury in New York by purchasing—or paying a price premium for—recalled, uniformly defective Products that did not conform to Defendant's French-door advertising.

77. Pursuant to GBL § 350-e(3), Plaintiff and the New York Subclass seek injunctive relief, actual damages or statutory damages of $500 per violation (whichever is greater), discretionary treble damages up to $10,000 per willful or knowing violation, and mandatory reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class, or, in the Alternative, the New York Subclass)**

78. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

79. Defendant, as the designer, importer, warrantor, marketer, distributor, and seller of the Products, expressly warranted on the Products' uniform packaging, Target.com product listings, and accompanying written materials—within the meaning of U.C.C. § 2-313 as adopted

across the United States, including N.Y. U.C.C. Law § 2-313—that each Product was a safe, functional "9-Slice Digital Air Fryer Oven with 14 One-Touch Cooking Functions and Auto French Doors" whose "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven," and further provided a written "1 Year Limited Warranty" against defects in materials and workmanship.

80. These uniform written affirmations of fact, promises, and product descriptions were directed by Defendant to ultimate retail consumers, including Plaintiff and Class Members, and became part of the basis of the bargain for every purchase of Model GTF7530.

81. Defendant breached its express warranties at the point of sale—and well within the 1-year warranty period as to Plaintiff, who purchased his Product on March 7, 2026—because every recalled unit uniformly contained the Defect: spring-loaded glass front French doors lacking an adequate doorstop that unexpectedly close when bumped during hot-food retrieval, rendering the Products unsafe and nonconforming to Defendant's express affirmations.

82. Defendant's November 5, 2026 Recall of approximately 175,951 units of Model GTF7530 (Recall No. 27-069) constitutes a formal admission that the Products do not conform to Defendant's express representations and warranties, while offering only a mail-order aftermarket doorstop kit—and refusing refunds or factory-safe replacement ovens—fails to cure Defendant's breach and causes any purported repair-only warranty limitation to fail of its essential purpose under U.C.C. § 2-719(2).

83. Defendant had actual, extensive pre-suit notice of the Defect and its breach of express warranty prior to the filing of this action through its own engineering and quality-control records, Target customer return data, at least 57 consumer reports of unexpected French-door

closures and 40 reports of hand and wrist burn injuries, and its joint investigation with the CPSC culminating in Recall No. 27-069.

84. Any additional individualized pre-suit notice letter from Plaintiff would have been wholly futile because Defendant already acknowledged the exact French-door hazard in Model GTF7530 on a fleet-wide basis in Recall No. 27-069 yet categorically limited its uniform consumer remedy to a mail-in DIY doorstop kit rather than a refund or replacement. Moreover, under settled New York law, strict U.C.C. § 2-607 notice requirements are relaxed or inapplicable in actions against a manufacturer or importer involving retail consumer products that pose a physical safety and burn hazard during ordinary household use.

85. Direct vertical privity is not required because Defendant made its uniform written express representations and 1-year warranty directly to ultimate consumers on the Products' packaging, manuals, and authorized Target.com product listings, and because Plaintiff and Class Members are the intended end-user beneficiaries of Defendant's distribution agreements with Target.

86. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered actual economic damages in an amount to be proven at trial, including the purchase price paid, overpayment/price-premium damages, or diminution in value of the defective Products.

**FOURTH CAUSE OF ACTION**
**Fraudulent Concealment / Fraud by Omission**
**(On Behalf of Plaintiff and the Nationwide Class, or, in the Alternative, the New York Subclass)**

87. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

88. Prior to and at the time Plaintiff and Class Members purchased the Products at Target stores and on Target.com, Defendant intentionally concealed, suppressed, and omitted from the Products' outer retail packaging, Target.com product listings, and point-of-sale marketing materials the material fact that Model GTF7530 suffered from the uniform French-door Defect and posed a serious burn hazard to consumers' hands and wrists when retrieving hot food.

89. Defendant had a clear, independent duty to disclose the Defect to Plaintiff and Class Members prior to sale because: (a) Defendant possessed exclusive and superior knowledge of the Defect derived from its internal hinge and spring specifications, factory testing, Target return logs, and 57 documented incident reports (including 40 burn injuries) that were not accessible to retail shoppers; (b) the Defect constituted a serious latent safety hazard threatening bodily injury during ordinary household cooking; and (c) Defendant made affirmative partial representations touting the convenience of the Products' "Auto French Doors" and claiming "[s]ingle-pull stylish French doors leave you with a free hand to hold your food while opening the oven," which were deceptive and half-truths absent simultaneous disclosure of the door-slamming burn hazard.

90. The concealed Defect was highly material because any reasonable consumer purchasing a 1,700-watt countertop oven would consider the risk of spring-loaded glass doors snapping shut onto their hands and wrists while removing hot cookware critical to their purchasing decision and willingness to pay.

91. Defendant knew prior to Plaintiff's March 7, 2026 purchase—and throughout the period in which dozens of door closures and burn injuries were reported—that its safety omissions were material, and intentionally withheld disclosure so it could continue selling existing Target inventory at full or promotional retail prices through June 2026.

92. Plaintiff and Class Members did not know, and could not reasonably have discovered, the Defect at the time of purchase, and reasonably and justifiably relied to their detriment on Defendant's uniform product representations and material omissions—including when Plaintiff Peace reviewed the Target.com listing for Model GTF7530 and purchased his unit on March 7, 2026.

93. Had Defendant disclosed the truth about the Defect on the Products' packaging and Target.com product listing, Plaintiff and Class Members would not have purchased the Products, or would have paid substantially less for them.

94. As a direct and proximate result of Defendant's fraudulent concealment and omissions, Plaintiff and Class Members suffered actual monetary damages at the point of sale. Because Defendant's multi-year concealment of a known burn hazard in the face of 40 reported burn injuries exhibited willful, wanton, and conscious disregard for consumer rights and safety, Plaintiff and Class Members also seek punitive damages.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(In the Alternative, On Behalf of Plaintiff and the Nationwide Class, or, in the Alternative, the New York Subclass)**

95. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96. Plaintiff pleads this claim in the alternative pursuant to Fed. R. Civ. P. 8(d)(2) solely to the extent that legal, statutory, or warranty remedies are deemed unavailable or inadequate.

97. Plaintiff and Class Members conferred a direct and measurable financial benefit upon Defendant by purchasing approximately 175,951 recalled units of Model GTF7530 through

Defendant's primary retail partner, Target, generating millions of dollars in wholesale and retail revenues for Defendant.

98. Defendant appreciated, accepted, and retained those revenues despite knowing that the Products contained the uniform French-door Defect and despite publicly admitting in Recall No. 27-069 that the Products pose a burn hazard requiring consumers to immediately stop using them, while offering purchasers only an aftermarket mail-in doorstop rather than refunding their money.

99. Under principles of equity and good conscience, it would be unjust and unconscionable to permit Defendant to retain the revenues and profits derived from marketing and selling uniformly defective, unsafe cooking appliances through material misrepresentations and safety omissions.

100. Plaintiff and Class Members therefore seek restitution and disgorgement of Defendant's inequitably obtained monies, revenues, and profits.

## JURY TRIAL DEMAND

101. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Nationwide Class and New York Subclass, respectfully requests that the Court enter judgment granting the following relief:

- An order certifying the proposed Nationwide Class and New York Subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), appointing Plaintiff Damyon Peace as Class Representative, and designating Plaintiff's counsel as Class Counsel.
- An award of actual, compensatory, benefit-of-the-bargain, price-premium, incidental, consequential, and punitive damages, as well as statutory damages of $50 per violation under N.Y. Gen. Bus. Law § 349(h), statutory damages of $500 per violation under N.Y.

Gen. Bus. Law § 350-e(3), treble damages where permitted by statute, and equitable restitution in an aggregate amount exceeding $5,000,000 to be proven at trial.

- Declaratory and injunctive relief enjoining Defendant's unlawful and deceptive practices and requiring Defendant to implement an effective, court-supervised recall remedy offering Class Members full monetary refunds or factory-engineered, defect-free replacement appliances.
- An award of mandatory statutory attorneys' fees pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3), together with reasonable attorneys' fees, expert witness fees, litigation expenses, costs of suit, and a Class Representative service award as permitted by applicable law.
- An award of pre-judgment and post-judgment interest at the maximum rate permitted by law.
- Such other and further relief as this Court may deem just, equitable, and proper.

Dated: November 20, 2026
Mineola, New York

**Leeds Brown Law, P.C.**

*/s/ Brett R. Cohen*
Brett R. Cohen, Esq.
Jeffrey K. Brown, Esq.
134 Mineola Blvd – 2nd Floor
Mineola, NY 11501
bcohen@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
Tel: (516) 873-9550
*Counsel for Plaintiff and Proposed Classes*